UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13 CR 731 |
| vs. | ) | |
| | ) | Judge Charles P. Kocoras |
| H. TY WARNER | ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant H. TY WARNER, and his attorneys, Gregory J. Scandaglia, Mark E. Matthews and Michael J. Garcia, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Plea Agreement have agreed upon the following:

### Charge in this Case

2. The information in this case charges defendant with one count of tax evasion, in violation of Title 26, United States Code, Section 7201.

3. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorneys.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with tax evasion, in violation of Title 26, United States Code, Section 7201.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Sentencing Guideline § 1B1.3:

As charged in the information, between 1996 and continuing until at least November 2007, defendant H. TY WARNER, a resident of Oak Brook, Illinois, willfully did attempt to evade and defeat approximately $885,300 in income tax due and owing by him to the United States of America, and the payment thereof, for calendar year 2002 and took affirmative acts, including those described below to accomplish his evasion.

During the relevant time period, WARNER was the 100% owner of TY Inc. and owned other business interests.

During the relevant time period, WARNER retained the services of Certified Public Accountants to prepare his tax returns and filings which he signed and verified.

On or about January 31, 1996, WARNER traveled to Zurich, Switzerland to open a secret offshore financial account with the Union Bank of Switzerland ("UBS"). The account held funds of WARNER's with profits or losses credited or debited to the account.

On or about January 31, 1996, WARNER agreed that any correspondence pertaining to his UBS account be held by the bank as opposed to being mailed elsewhere.

Between 1996 and 2007, WARNER failed to disclose the existence of the UBS account, that he held millions of dollars in the account, and that he had earned millions of dollars in investment income to his outside accountants who prepared his personal federal income tax returns.

Between 1996 and 2007, WARNER concealed the existence of his UBS account from the Internal Revenue Service by falsely claiming he did not have any foreign financial accounts by checking the "No" box on the Schedule B's attached to his Form 1040s filed with the Internal Revenue Service.

For each calendar year between 1996 and 2008, WARNER concealed the existence of his UBS account by failing to file annual Report of Foreign Bank and Financial Accounts ("FBARS") reporting the account.

In December of 2002, WARNER confirmed with UBS representatives his intention to close his UBS account and transfer those assets to Zürcher Kantonalbank ("ZKB") in Zurich, Switzerland. As a result, in and around December 2002 and January 2003, WARNER agreed to have UBS transfer the assets in his

UBS financial account, which had a balance of approximately $93,630,083 as of December 19, 2002, to ZKB.

Beginning in and around December 2002, WARNER concealed his name from being listed on the ZKB account by holding the account in the name of a purported "Molani Foundation."

In calendar year 2002, WARNER earned gross income through investments in the UBS account in the approximate amount of $3,161,788. WARNER failed to report that income to his outside accountants.

On or by June 30, 2003, WARNER failed to file an FBAR for calendar year 2002 with the Treasury Department and failed to disclose the required information about his UBS account.

On or about October 15, 2003, WARNER caused the preparation and caused the filing of a false and fraudulent United States Individual Income Tax Return (Form 1040) for calendar year 2002, which tax return was verified by written declaration that it was made under penalties of perjury, and which was filed with the Internal Revenue Service on behalf of himself. On that return, WARNER falsely claimed his total income was $49,124,095 in that he failed to report additional income in the approximate amount of $3,161,788 earned through investments in his UBS account, he falsely checked the "No" box and failed to disclose he had a financial account in Switzerland on his Schedule B, and he failed to report and pay over an additional $1,257,064 in taxes.

On or about November 5, 2007, WARNER filed an Amended U.S. Individual Income Tax Return (Form 1040X) for calendar year 2002 with the Internal Revenue Service and claimed a tax refund based on a net operating loss carryback in excess of $39,000,000 related to his 2004 tax year. WARNER failed to include his 2002 UBS income of $3,161,788 and falsely understated the "Correct amount" of his adjusted gross income and taxable income on that form. WARNER additionally understated the "Correct amount" of his total tax by approximately $885,300.

By the time the amended return was filed, WARNER had failed to disclose the existence of the UBS account and the fact that he had earned $3,161,788 in investment income through that account in calendar year 2002 to his tax return preparers. As a result, WARNER falsely understated his adjusted gross income and taxable income for 2002 by that amount on the amended return. Additionally, WARNER falsely understated his "Correct amount" of total taxes on the amended return by approximately $885,301.

**Additional Offense and Relevant Conduct**

In addition to the charged year of 2002, WARNER failed to provide information about his offshore accounts at UBS and ZKB and the annual amounts of income earned through those accounts to his tax return preparers until no earlier than in 2009. As a consequence, WARNER under reported his gross income on his annual federal income tax returns for tax years 1996 through 2007 by amounts earned on his investments held in those financial accounts, and WARNER concealed the existence of those accounts from the Internal Revenue Service by falsely claiming

5

he did not have any foreign financial accounts by checking the "No" box on the Schedule Bs attached to those tax returns. The amount of undisclosed gross income for the tax years for which investment and income records still exist, 1999 through 2007, is approximately $24,448,912.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum term of imprisonment of 5 years, a maximum fine of $250,000, and a maximum term of supervised release of 3 years, and the costs of prosecution, estimated not to exceed $500.

    b. Defendant further agrees that the Court shall order defendant to pay restitution to the United States Treasury in an amount to be determined at time of sentencing.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pleaded guilty, in addition to any other penalty or order of restitution imposed by the Court.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided in part by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

b. **Offense Level Calculations.**

i. Pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(J), the base offense level is 24 because the total amount of the tax loss from the charged offense and relevant conduct ($5,594,877) is more than $2,500,000, but not more than $7,000,000.

ii. The base offense level should be increased by 2 levels under Guideline § 2T1.1(b)(2) because the offense and relevant conduct involved sophisticated means.

iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine or restitution that may be imposed in this case, a 2-level reduction in the offense level will be appropriate.

   iv. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a 2-level reduction for acceptance of responsibility, the government will move for an additional 1-level reduction in the offense level.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal 0 and his criminal history category is I.

  d. **Anticipated Advisory Sentencing Guideline Range.** Based on the facts now known to the government, the anticipated offense level total is 23, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guideline range of 46-57 months of imprisonment, in addition to any term of supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorneys and the government acknowledge that the above Sentencing Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement.

Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guideline calculation. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Office's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of those calculations.

f. Defendant understands that the Sentencing Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10. At the time of sentencing, the parties shall be free to recommend any sentence they deem appropriate.

11. It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum

penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12. Regarding restitution, defendant agrees to pay restitution to the United States Treasury, arising from the offense conduct and relevant conduct set forth above, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664 in an amount to be determined by the Court at time of sentencing. Defendant understands that the amount of tax loss as calculated by the IRS may exceed the amount of tax due as calculated for restitution in the criminal case.

13. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. Defendant further agrees that, in order to resolve his civil liability for willfully failing to file annual Reports of Foreign Bank and Financial Accounts for calendar years 1996 through 2008, defendant shall pay to the United States Treasury, prior to the date of sentencing, a civil money penalty in the amount of $53,552,248, which represents 50% of the highest balance of defendant's offshore

accounts between calendar years 1996 and 2008 (that is, 50% of $107,104,968, the ZKB maximum account balance in 2008).

## **Acknowledgments and Waivers Regarding Plea of Guilty**

### **Nature of Agreement**

16. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 731.

17. This Plea Agreement concerns criminal liability only with the exception as noted above in paragraph 15 which is a material condition of this plea agreement. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

18. Defendant understands that nothing in this Plea Agreement shall limit the IRS in its collection of any taxes, interest, or penalties from defendant or defendant's corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

## Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Plea Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

    b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt as to each count.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      c.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

      d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

20.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this

information, may be used as a basis for denial of a reduction for acceptance of responsibility under Sentencing Guideline § 3E1.1 and for enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of court.

22. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24. Regarding matters relating to the IRS, defendant agrees as follows (nothing in this paragraph, however, precludes defendant or defendant's

corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

      a.    Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

      b.    Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure to the IRS of documents, testimony, and related investigative materials that may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the IRS for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant or defendant's corporations.

## Conclusion

25.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the Court refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound to it.

28. Defendant and his attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorneys. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: October 2, 2013

_____
GARY S. SHAPIRO
United States Attorney

_____
JAMES M. CONWAY
Assistant United States Attorney
Associate Chief, Criminal Division

_____
H. TY WARNER
Defendant

_____
GREGORY J. SCANDAGLIA
Attorney for Defendant

_____
MARK E. MATTHEWS
Attorney for Defendant

_____
MICHAEL J. GARCIA
Attorney for Defendant