1                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
2                          EASTERN DIVISION

3
    UNITED STATES OF AMERICA,          )   Docket No. 13 CR 731
4                                      )
                        Plaintiff,     )
5                                      )
                   vs.                 )
6                                      )
    H. TY WARNER,                      )   Chicago, Illinois
7                                      )   October 2, 2013
                        Defendant.     )   10:00 o'clock a.m.
8

9              TRANSCRIPT OF PROCEEDINGS - CHANGE OF PLEA
                BEFORE THE HONORABLE CHARLES P. KOCORAS
10

11  APPEARANCES:

12

13  For the Plaintiff:      MR. GARY SHAPIRO
                            Acting United States Attorney
                            BY:  MR. JAMES M. CONWAY
14                          219 S. Dearborn St., Suite 500
                            Chicago, Illinois  60604
15

16  For the Defendant:      SCANDAGLIA & RYAN
                            BY:  MR. GREGORY J. SCANDAGLIA
17                          55 E. Monroe St., Suite 3440
                            Chicago, Illinois  60603
18

19  Court Reporter:         MS. JOENE HANHARDT
                            Official Court Reporter
20                          219 S. Dearborn Street, Suite 1744-A
                            Chicago, Illinois  60604
21                          (312) 435-6874

22              *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

23                    PROCEEDINGS RECORDED BY
                       MECHANICAL STENOGRAPHY
24               TRANSCRIPT PRODUCED BY COMPUTER

25

```
 1              THE CLERK:  13 CR 731, U.S. vs. H. Ty Warner.

 2   Arraignment and plea.  Initial status.

 3              MR. CONWAY:  Good morning, your Honor, James Conway on

 4   behalf of the United States.

 5              THE COURT:  Good morning.

 6              MR. SCANDAGLIA:  Good morning, your Honor, Greg

 7   Scandaglia on behalf of the defendant, Ty Warner.

 8              THE COURT:  Good morning.

 9              THE DEFENDANT:  Good morning, your Honor.

10              THE COURT:  You are Mr. Warner?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  Good morning.

13              THE DEFENDANT:  Good morning, sir.

14              THE COURT:  I take it this is here for a plea?

15              MR. CONWAY:  That's correct, Judge.

16              THE COURT:  And you have a plea agreement in this

17   case?

18              MR. CONWAY:  Yes, I do.

19              THE COURT:  And it is a one-count plea --

20              MR. CONWAY:  Yes.

21              THE COURT:  -- to --

22              MR. CONWAY:  It is a plea to one count of tax evasion,

23   26 U.S.C., Section 7201.

24              THE COURT:  Okay.

25              MR. CONWAY:  At this time, your Honor, I will tender
```

1   also an executed Waiver of Indictments.

2           THE COURT:  Okay.

3           (Document tendered.)

4           MR. CONWAY:  And the signed plea agreement.

5           (Document tendered.)

6           THE COURT:  All right.

7           What are the material terms of the plea agreement, Mr.

8   Conway?

9           MR. CONWAY:  The material terms are that he will plead

10  guilty to one count of tax evasion; acknowledge relevant

11  conduct, which spans about approximately 11 years; will

12  acknowledge a total income not being reported on returns of

13  about $25 million; a tax due and owing of just about 5 million.

14          As far as the terms of recommendations, both parties

15  are free to recommend to you any sentence they deem

16  appropriate.

17          In addition, there is a particular provision that he

18  is agreeing to settle his civil liability with IRS for failing

19  to file Foreign Bank and Financial Account Reports, based on

20  the balance of a certain offshore account that he had, which

21  had a balance of approximately $107 million.

22          He has agreed to pay approximately $53 million to IRS.

23          THE COURT:  All right.

24          MR. CONWAY:  And when I go through the factual basis

25  for the plea, I will be more specific with the numbers.

```
 1              THE COURT:  Okay.

 2              Is that what your understanding of the plea agreement

 3  terms are?

 4              MR. SCANDAGLIA:  Yes, your Honor.

 5              THE COURT:  And is that what you understand, Mr.

 6  Warner, to be the terms of the plea agreement?

 7              THE DEFENDANT:  Yes, sir, I do.

 8              THE COURT:  All right.

 9              In order for you to plead guilty under this plea

10  agreement and under the charge in this case -- which is by way

11  of Information -- I have to ask you a series of questions to

12  make sure your plea of guilty is valid and proper under the

13  law.  So, in doing this --

14              THE DEFENDANT:  Your Honor, could I interrupt you just

15  a second?

16              THE COURT:  Yes, of course.

17              THE DEFENDANT:  My hearing isn't so good.  And if I

18  could --

19              THE COURT:  All right.  I will use the microphone.

20  Okay?

21              THE DEFENDANT:  Thank you very much.

22              THE COURT:  And if you cannot hear what I am saying or

23  you do not understand anything I am saying, tell me and I will

24  do it better.  Okay?

25              THE DEFENDANT:  Yes, sir.
```

1          MR. SCANDAGLIA:  Thank you, your Honor.

2          THE COURT:  All right.

3          So, I am going to have to ask you a lot of questions

4    to make sure you understand what you are doing, and the terms

5    of this proceeding.

6          THE DEFENDANT:  All right.

7          THE COURT:  And, so, I am going to do that by having

8    you sworn, so that your answers to me will be under oath.

9          So, I am obligated to tell you if you should lie to me

10   about anything I ask you, you would expose yourself to

11   additional criminal charges.

12         I do not expect that to happen, but I am obligated to

13   tell you that is the consequence of a knowing false answer to

14   one of my questions, assuming it is material to the

15   proceedings.

16         Do you understand that?

17         THE DEFENDANT:  Yes, sir, I do.

18         THE COURT:  All right.

19         Swear Mr. Warner.

20         (Defendant sworn.)

21         THE COURT:  Now, Mr. Warner, because these are felony

22   charges, you have a right to have a grand jury listen to

23   evidence and decide whether there is probable cause to believe

24   you committed the crime you are charged with.

25         Do you understand that?

```
 1              THE DEFENDANT:  Yes, I do.

 2              THE COURT:  And by waiving the indictment, you are

 3    agreeing to have the prosecutor -- the United States Attorney

 4    in this District -- bring the charges himself, rather than

 5    through the vote of the grand jury.

 6              Do you understand that?

 7              THE DEFENDANT:  Yes, sir.

 8              THE COURT:  And I think you signed a document to that

 9    effect.

10              Do you understand that?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  And do you understand generally what a

13    grand jury is?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  It is a group of people that exists to be

16    between you -- the citizen -- and the prosecution, and to make

17    sure whatever charges are brought are fairly founded factually

18    and in the law.

19              Do you understand that?

20              THE DEFENDANT:  Yes, sir, I do.

21              THE COURT:  Okay.

22              So, that is the first right you give up by pleading

23    guilty.  And, so, now I am going to describe other rights for

24    you.

25              First, the plea agreement, as I understand it, is as
```

```
 1   follows, in general terms:  There is a one-count charge brought

 2   in this Information, but the one count spans a period of time,

 3   both directly -- the count, itself; the specific charges -- as

 4   well as what we call relevant conduct -- measurable conduct --

 5   in determining the appropriate sentence in this case,

 6   transcending at least eleven years.

 7            Do you understand that?

 8            THE DEFENDANT:  Yes, sir.

 9            THE COURT:  So, it is a fairly inclusive charge in

10   this case covering a substantial period of time.

11            Do you understand that?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  All right.

14            Additionally, the essence of the charge is that you

15   did not report over, either the year in question --

16            What is the year in question?

17            MR. CONWAY:  2002, for approximately $3 million.

18            THE COURT:  -- 2002, plus these other periods of time,

19   approximately $25 million.

20            Do you understand that?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  That is what you are being charged with.

23            And the government says the tax on that is

24   approximately $5 million.

25            Is that right?
```

1          MR. CONWAY:  Correct.

2          THE COURT:  All right.

3          So, give or take some of that.

4          As far as sentencing is concerned, you and your lawyer

5     are free to recommend what you think is the appropriate

6     sentence in this case, after all is said and done.

7          And the government is, likewise, free to recommend

8     what they think is an appropriate punishment in this case,

9     given the facts and circumstances.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.

13          And, then, there is one collateral consequence having

14     to do with your agreement to settle a civil liability claim

15     that the government has or will lodge against you, having to do

16     with your failure to file certain reports having to do with

17     accounts not based in the United States.  And that agreement is

18     to pay a penalty in either the exact amount or approximate

19     amount of $53 million.

20          Is that right?

21          THE DEFENDANT:  Yes, sir, it is.

22          Yes, your Honor.

23          THE COURT:  And do you understand those are the terms

24     of the plea agreement, nothing more and nothing less?

25          Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Okay.  Very good.

3                     EXAMINATION

4  BY THE COURT:

5  Q.  Now, would you tell me how old you are?

6  A.  I am 69.

7  Q.  All right.

8          And what is your educational background?

9  A.  I have one year of college.

10  Q.  Okay.

11          And where did you go to college?

12  A.  I am sorry?

13  Q.  Where did you go to school -- college?

14  A.  I went to Kalamazoo College in Kalamazoo, Michigan.

15  Q.  Okay.

16          And you were born in the United States, I take it?

17  A.  Yes, sir.

18  Q.  Okay.

19          Have you recently used anything such as drugs,

20  medicine, pills, alcohol -- anything that would affect your

21  ability to understand what we are doing here this morning?

22  A.  No, sir, I have not.

23  Q.  Okay.

24          THE COURT:  Do either of the attorneys have any

25  question or doubt as to Mr. Warner's competence to plead

```
 1   guilty?
 2           MR. SCANDAGLIA:  None, your Honor.
 3           MR. CONWAY:  No, your Honor.
 4           THE COURT:  All right.
 5           I find he is, in fact, competent to plead guilty,
 6   based on the attorneys' statements and my own observation of
 7   his participation in this proceeding.
 8   BY THE COURT:
 9   Q.  Have you had enough time to discuss this case with your
10   attorney, Mr. Scandaglia?
11   A.  Yes, sir, I have.
12   Q.  And are you satisfied with his representation of you?
13   A.  I am.
14   Q.  Okay.
15   A.  Yes, your Honor.
16   Q.  He feels comforted by that.
17   A.  Yes, sir.
18           THE COURT:  Right?
19           (Laughter.)
20           MR. SCANDAGLIA:  Absolutely, your Honor.
21           THE COURT:  All right.
22           THE DEFENDANT:  He hopes so.
23           (Laughter.)
24   BY THE COURT:
25   Q.  As I indicated to you earlier, you have a right to be
```

1  charged by an indictment and not by the Information brought by

2  the U.S. Attorney.  You understand that.  You signed the form.

3  We do not have to go through that, again.

4  A.  Yes, sir.

5  Q.  Do you understand?

6  A.  Yes, your Honor.

7  Q.  In addition to that right, you have a right to plead not

8  guilty in this case and to persist in that plea and to not

9  incriminate yourself; not say something from your own lips

10  which indicates you violated the law.

11        But by pleading guilty in this case, you give up the

12  right to remain silent because I am going to ask you in a few

13  minutes what you did in this case, and your answer will

14  presumably incriminate you.

15        Do you understand that?

16  A.  Yes, sir, I do.

17  Q.  All right.

18        So, if you pled not guilty in this case and persisted

19  in that plea of not guilty, you would have a right to a trial

20  by jury, which means you would have a right to have twelve fair

21  and impartial members of this community listen to the evidence;

22  and, before you could be found guilty, all twelve people would

23  have to be unanimous in their verdict of guilt.

24        Do you understand that?

25  A.  Yes, sir.

1  Q.  In addition to that body of people, you would have a right

2  to participate in the selection of that jury; and, if anyone

3  was not fair or impartial, they would not be seated as jurors;

4  you could ask me to ask questions of the prospective jurors;

5  and, you could listen to their answers and decide if you

6  thought somebody was biased or what have you.  You could tell

7  me that.

8          And, beyond that, you could excuse up to ten members

9  of the jury pool for no reason at all.  It is called a

10  pre-emptory challenge.  You could do that, as well.

11          Do you understand that?

12  A.  Yes, your Honor.

13  Q.  The essence of that activity is to ensure you get a fair

14  trial in this case by a jury of your peers.

15          Do you understand that?

16  A.  Yes, sir.

17  Q.  All right.

18          If you did not want a jury trial in this case, you

19  could have what is called a bench trial -- a trial by me or

20  another judge in my place who would listen to the evidence and

21  decide the question of your guilt or innocence, rather than a

22  jury of twelve.

23          Do you understand that?

24  A.  Yes, I do.

25  Q.  All right.

1          If you went to trial in this case, you would be

2     presumed innocent of the charges; the government would have the

3     burden of proving you guilty beyond a reasonable doubt; you

4     would have a right to be represented at all phases of the

5     trial; and, if you could not afford a lawyer -- as, I think,

6     does not apply to you -- you would have a right to have a

7     lawyer appointed to represent you, do you understand, at no

8     cost to you, if you were indigent?

9          Do you understand that?

10    A.   I do, sir.

11    Q.   Okay.

12         During this trial, you would have a right through your

13    lawyer to cross-examine the government witnesses; to object

14    when the government offered evidence against you; and, I would

15    make a ruling on whether your objection was meritorious or not

16    and whether it would be sustained or not.

17         But you could challenge the evidence that is presented

18    against you.

19    A.   Uh-huh.

20    Q.   You would also have the power of subpoena.  So, you could

21    compel witnesses to appear here on your behalf and testify in

22    your case if they had some knowledge of your case.

23         You would also have a right to testify on your own

24    behalf at your own trial, if that is what you wished.

25         And if you did not want to testify, you would have a

1   right not to testify, and no one could infer or think you were

2   guilty because you did not testify at your own trial.

3          Do you understand that?

4   A.  Yes, your Honor.

5   Q.  Okay.

6          And, finally, if you were convicted after a trial and

7   sentenced to whatever the sentence was, you could appeal to a

8   higher court anything that you claim that was untoward --

9   "untoward" meaning illegal and improper -- in the government's

10  investigation in your case, or the conduct of the trial or any

11  mistakes that you think I made or whatever other judge heard

12  the case made; you could challenge -- or the sentencing process

13  or the fact of the imposition of sentence, you could challenge

14  -- all of that in a higher court.

15         But, by pleading guilty, you give up, essentially, all

16  of the rights to bring this matter and all of those things I

17  included in that to a higher court for a higher court's

18  consideration.

19         Do you understand that?

20  A.  Yes, sir, I do.

21  Q.  You do not give up all of your rights entirely to appeal,

22  but virtually all.

23         Do you follow?

24  A.  I do follow, sir.

25  Q.  Okay.

1          Do you understand everything I have described for you?

2   A.   Sir?

3   Q.   Do you understand all of the rights I have described for

4   you --

5   A.   Yes.

6   Q.   -- and the concomitant explanations?

7   A.   Yes, sir, I do understand.

8   Q.   All right.

9          Is it your desire to plead guilty in this case and

10   waive or give those rights up?

11   A.   Yes, sir, it is.

12   Q.   Okay.

13          Have you discussed these charges with your counsel?

14   A.   Yes, sir, I have.

15   Q.   And do you understand what you are charged with?

16   A.   I do, your Honor.

17   Q.   Fully?

18   A.   Yes, sir.

19   Q.   Okay.

20          THE COURT:   What is the maximum possible punishment in

21   this case, Mr. Conway?

22          MR. CONWAY:   Five years' incarceration, a $250,000

23   fine and the costs of the prosecution.

24          THE COURT:   And supervised release?

25          MR. CONWAY:   Correct.

1          THE COURT:  How much?

2          MR. CONWAY:  Approximately, three years.

3          THE COURT:  Up to three years?

4          MR. CONWAY:  Yes.

5          THE COURT:  And civil consequences that may ensue, in

6    addition to the agreed liability for failure to file certain

7    reports, of approximately $53 million; is that right?

8          MR. CONWAY:  That is correct.

9          THE COURT:  That is not the civil tax assessment on

10   the tax due, based on what you claim was omitted from his

11   returns; is that right?

12         MR. CONWAY:  Not at all.

13         As in most tax cases, what will happen is we have come

14   up with our criminal tax figures.  IRS is not bound by those

15   and will do their own determinations of tax due and owing for

16   the years in question.

17         THE COURT:  All right.

18   BY THE COURT:

19   Q.  Mr. Warner, under the statute to which you are pleading

20   guilty -- or offering to plead guilty -- the maximum period of

21   incarceration is five years in prison.  That is the maximum.

22         The maximum fine is $250,000, in addition to the costs

23   of prosecution, which in the context of this case will be

24   relatively minor.

25         If you are in prison and released, you could be put on

1  something called supervised release for a period of up to

2  three years.  And that means, essentially, that you would have

3  your freedom, but certain conditions to live by and abide by.

4  And if you failed to do that, you could wind up back in prison.

5          That is what "supervised release" means.

6          Do you understand that?

7  A.  Yes, sir, I do.

8  Q.  Okay.

9          Now, in addition to the maximum punishments the

10  statute affords, we have another proceeding called Sentencing

11  Guidelines in the federal system.  And that is a system in

12  which there are certain facts that you, arguably, have engaged

13  in and certain background experiences you have, both good and

14  not so good.

15          There are a number of considerations that are

16  determined to be applicable to you.  And these determinations

17  carry a numerical value and it produces a number.

18          Then, we look at whether you have ever been in trouble

19  with the law before.

20          I take it you have not been, is my sense --

21  A.  No.

22  Q.  -- and that produces another number.

23          And those two numbers get put on a grid, and this grid

24  produces a Guideline sentence.

25          Now, for the longest time -- since 1987 -- the

1    Guidelines have been mandatory and we had to follow them unless

2    we had a compelling reason not to.

3            The present state of the law is that the Guidelines

4    are advisory.  And, so, we are obligated to consult them.  And

5    I do not want to make you an expert in sentencing in the

6    federal system, but the point of the Guidelines is to sentence

7    similarly-situated defendants, committing similarly-type

8    crimes, to the same -- or, generally, the same -- kind of

9    punishment; some uniformity in sentencing and truth in

10   sentencing.

11           Do you have a general idea about that?

12   A.  Yes, sir.

13   Q.  All right.

14           So, we are obligated to make that calculation.  And it

15   is made.

16           And you will get a chance to review the calculation

17   because, under the law, we are obligated to consult that

18   calculation; and, determining what a proper sentence would be

19   in this case, would be within the discretion of the sentencing

20   judge.

21   A.  Okay.

22   Q.  But we are obligated to consult it.

23           And we are free, if we have reason to, to not follow

24   it or follow it, as the case may be.

25           Do you follow all of that?

1    A.  Yes, I do.  I do follow.

2    Q.  All right.

3           Do you also understand in the federal system parole

4    has been abolished and we do not have parole anymore, which

5    means if you had a sentence of whatever it was, parole might

6    mean you would only do a third or a half.

7           But that system has not been in the federal system for

8    a long, long time and it should not appeal to you as a

9    possibility.

10          Do you understand that?

11   A.  Yes, sir, I do.

12   Q.  All right.

13          Is anyone threatening you to plead guilty in this

14   case?

15   A.  No, they have not.

16   Q.  Is anyone forcing you to plead guilty in this case?

17   A.  No, no one has.

18   Q.  All right.

19          Are you pleading guilty of your own freewill in this

20   case?

21   A.  Yes, sir, I am.

22          Yes, your Honor.

23   Q.  Now, have you read the written plea agreement in this case?

24   A.  Yes, sir, I have.

25   Q.  All right.

1        And do you agree with what that plea agreement says as

2   to what you did in this case?

3   A.  Yes, I agree.

4   Q.  Okay.

5        And Mr. Conway outlined the plea agreement at the very

6   outset of this hearing.  I repeated it.

7        Is there anything you do not understand about the plea

8   agreement?

9   A.  There is nothing I don't understand.

10  Q.  Okay.

11       Has anyone told you or assured you what my sentence

12  will be in this case?

13  A.  No, sir.

14  Q.  All right.

15       Do you know that as I sit here now, I do not know what

16  your sentence will be in this case?

17       (Brief pause.)

18  BY THE COURT:

19  Q.  You are aware of that; are you not?

20  A.  Yes, sir, I am.

21  Q.  All right.

22       THE COURT:  Would you summarize briefly what your

23  evidence would show in this case --

24       MR. CONWAY:  Yes, your Honor.

25       THE COURT:  -- at trial?

1      MR. CONWAY:  Had we gone to trial, we would prove that

2  the defendant, Mr. Warner, was the owner and creator of Beanie

3  Babies.  Through his company, Ty Inc., he was the hundred

4  percent owner.

5      He also had multiple other business interests during

6  the relevant time period.

7      In January of -- exactly on January 31st -- 1996, he

8  flew to Zurich, Switzerland; and, at that time, he opened a

9  financial account at Union Bank of Switzerland, otherwise known

10 as "UBS."

11     In that account, he deposited funds in that account;

12 and, through that account, he was able to make investments.

13     Those investments, in turn, either would make him

14 income or loss, as investment income or investment loss.

15     When he opened that account, he kept that account

16 secret, as an offshore secret account.

17     He had accountants from all of his companies.  He

18 failed to disclose the account to them.

19     He had accountants for personal matters.  He failed to

20 disclose the account to them.

21     He had accountants who prepared tax returns for both

22 his business interests and for himself.  He failed to report

23 and disclose that account to them.

24     Some of those accountants were privy to both personal

25 and business activity of Mr. Warner, as well.

1          The government was able to obtain certain, but not
2    all, of the records from UBS.  It reflected millions of dollars
3    of income earned in the account from 1999 through 2002.
4          In late 2002, Mr. Warner moved his funds from the UBS
5    bank to a second Swiss bank.  And I will spell it.  It is
6    Zurcher Kantonalbank, Z-u-r-c-h-e-r K-a-n-t-o-n-a-l-b-a-n-k;
7    and, for shorthand, I will call it "ZKB."
8          When he moved that money on approximately
9    December 19th, 2002, the balance in the account was
10   $93,630,083; and, like UBS, he kept the ZKB account secret from
11   everybody else in the world.
12         Additionally, in order to keep it secret, he held the
13   account in the name of a sham company, called the "Molani
14   Foundation," M-o-l-a-n-i.
15         That account, similar to the UBS account, made
16   millions and millions in income, from the years 2003 through
17   2007, for Mr. Warner.
18         The effect on his taxes?  Well, for each of the years
19   in question, between 1996 through 2007, he failed to report any
20   of the investment income on his personal income tax return,
21   Form 1040.
22         Additionally, he falsely claimed on his Schedule Bs
23   attached to those 1040s that he had no interest in any
24   financial account in any foreign country; and, he also failed
25   to acknowledge and identify the country -- that being

1    Switzerland -- where he maintained that account.

2           The total amount of income earned through those two

3    accounts, for which we have records -- '99 through '07 -- was

4    approximately $24,448,912.

5           The rough tax calculation, for criminal purposes on

6    that amount, is $5,594,877.

7           Additionally, for the years in question, Mr. Warner

8    failed to file annual Reports of Foreign Bank and Financial

9    Accounts, otherwise known as "FBARS."

10          He was required on those reports to report his account

11   and, also, the high balance in that account for the year.  His

12   failure to file those reports continued through the 2008 tax

13   year.

14          I will mention that now, only because the specific

15   provision that is contained in Paragraph 15, the high balance

16   for the entire period was in 2008.  That amount being $107

17   million -- $107,104,968.

18          I have sort of outlined the conduct that took place

19   over a span of approximately eleven to twelve years.  As far as

20   the specific charge, those affirmative acts that I just

21   mentioned also relate to the 2002 tax year.  And I will also

22   mention some specifics.

23          For the actual year 2002, which is charged in the

24   Information, the income made in the UBS account for Mr. Warner,

25   that was not disclosed on his return, was $3,161,788.

1        Like all of the other years, he failed to disclose the

2    account to any accountant.

3        His original 1040 was filed on October 15th, 2003.

4    That return was materially false.  He failed to include the

5    $3 million of income.  So, his Gross Income, Adjusted Gross

6    Income, Total Income, all of those lines were false.  He failed

7    to check the "Yes" box, give a financial account on a Schedule

8    B, and failed to acknowledge Switzerland as the country for the

9    account.

10        His amount of tax was also false.  He failed to pay

11    approximately $1,257,064 on that income.  And he filed that tax

12    return with the IRS.

13        Fast forward several years to 2007.  He had unrelated

14    net operating losses, otherwise known as "NOLs," that could be

15    carried back.  And he had a particular NOL for the 2004 tax

16    year that he carried back to the 2002 year.

17        So, what he did, through his accountants, was to file

18    an amended return -- Form 1040X -- for the year 2002, which

19    would reflect the NOL.

20        On that amended return, he was also required to

21    correctly state his income for 2002, but he continued his lie

22    and failed to report the additional three million in income

23    from the UBS account.

24        Also, the correct amount of tax that was due and owing

25    on the amended return was, additionally, false by the failure

1    to include the correct amount of tax for that.

2          Because of a difference in unrelated tax calculations,

3    the amount of tax due and owing, had he reported his correct

4    income on the amended return, would be $885,301.

5          THE COURT:  I take it your view is there is no statute

6    of limitations issue or it has been waived?

7          MR. CONWAY:  There are waivers --

8          THE COURT:  The charge in the Information,

9    essentially -- that, at least, may obviate that -- is the

10   charge that in November of '07, he filed an amended return.

11         MR. CONWAY:  That is correct.

12         There are executed waivers of statute of limitations.

13         THE COURT:  So, this prosecution is timely, based on

14   that date; is that right?

15         MR. CONWAY:  Yes.

16         THE COURT:  And that springs into consideration the

17   prior returns, for which that net operating loss was carried

18   back --

19         MR. CONWAY:  That is correct.

20         THE COURT:  -- is that the idea?

21         MR. CONWAY:  It is a continuing act of evasion.

22         Not even the last affirmative act, if you will, would

23   be in 2007, because he continued to not disclose that account

24   for even a longer period.

25         THE COURT:  Has there been -- aside from that, has

 1    there been -- a waiver of any statute of limitations?

 2              MR. CONWAY:  Yes, there has.

 3              THE COURT:  There have been?

 4              MR. CONWAY:  Yes.

 5              THE COURT:  All right.

 6         I take it that is accurate and you are satisfied with

 7    that, counsel?

 8              MR. SCANDAGLIA:  Yes, your Honor.

 9              THE COURT:  Okay.

10    BY THE COURT:

11    Q.  All right, Mr. Warner, I am going to ask you to state in

12    your own words, without great elaboration -- unless you choose

13    to offer it -- what you did in this case, that brought you to

14    my courtroom this morning.

15    A.  I opened up a foreign bank account in Switzerland about

16    20 years ago and I didn't tell anyone.  I didn't tell my

17    accountants.  I didn't tell the government.  I didn't tell

18    anyone.

19         And when I was doing my tax returns for the years, my

20    accountants did not know about this account, they did not know

21    about this bank and they did not report the income that I

22    accrued from that account in Switzerland.

23         And when I signed those tax returns, I knew that that

24    account -- that monies were missing.  I knew that when I signed

25    it.

1  Q.  Okay.

2  A.  It was not accurate.  The amount was not accurate.

3          And I apologize for my conduct.  It is a terrible way

4  to meet you, your Honor.

5  Q.  I agree.

6  A.  I have had, you know, great success with Ty, my company,

7  and I have so much to be thankful for.

8  Q.  Mr. Warner --

9  A.  There is no excuse for these actions.  I made a mistake.  I

10  am fully responsible.  I am pleading guilty because I am

11  guilty.

12  Q.  I appreciate that.

13          There will be a time -- today, I am interested in the

14  factual posture of the case.  There will be a time for you to

15  bare your soul, and that will be at sentencing.

16          But my concern now -- and I am not meaning to

17  hamstring you in any way in your presentation -- is to just

18  establish the facts of this case.

19          So, you do concede, obviously, through your own words,

20  that you did not report the income from this Swiss bank account

21  and did not tell anybody about it, especially your accountants,

22  who, I take it, prepared your returns, right?

23  A.  That is true, your Honor.

24  Q.  And, then, somewhere around 2002, you transferred that

25  account to another account, which also its secrecy was

1  maintained to all that were relevant to your tax preparations;

2  is that right?

3  A.  That is correct, your Honor.

4  Q.  And, at its high point, that account had, according to

5  Mr. Conway, about $107 million in the account; is that right?

6  A.  Yes, sir.

7  Q.  All right.

8       And for no account that was lodged in Switzerland --

9  in a Swiss bank or institution -- that is the income that you

10 did not report on your federal tax returns; is that correct?

11 A.  Yes, your Honor.

12 Q.  And, in addition to that, on the tax returns you did file,

13 you lied about whether there were any accounts that you owned

14 or possessed or were entitled to in your name in foreign

15 countries.

16      You did not disclose that, right?

17 A.  Yes, sir.

18      Yes, your Honor.

19 Q.  And it is for that -- those lies and that failure to

20 disclose -- that you have agreed to pay in fines the

21 approximate amount of $53 million; is that right?

22 A.  Yes, your Honor.

23 Q.  Okay.

24      THE COURT:  Is there anything I did not ask Mr.

25 Warner, that either counsel thinks I should have asked?

```
 1              MR. SCANDAGLIA:  Nothing at this stage of the
 2    proceedings, your Honor.
 3              MR. CONWAY:  No, your Honor.
 4              THE COURT:  All right.
 5              Mr. Warner, I am going to accept your plea of guilty
 6    in this case to the one-count Information.  I find you are
 7    aware of your constitutional rights; have waived or given them
 8    up; I find you are aware of the maximum possible punishment;
 9    the terms of the plea agreement; the collateral consequences of
10    the plea agreement; there is a factual basis for your plea, as
11    presented by the government; and, I find you have acknowledged
12    your guilt in this case, in your own presentation to me.
13              I find your plea is knowing, intelligent and
14    voluntary.  I accept it and enter judgment on the plea.
15              So, the remaining matters are to schedule a sentencing
16    date, which will be some three months hence.
17              When might that be, Yolanda?
18              THE CLERK:  Maybe a little longer?
19              THE COURT:  Yes.
20              It might be longer.  We are going to bump into
21    holidays here.
22              THE CLERK:  That will be January 15th.
23              THE COURT:  January 15th.
24              THE CLERK:  At 9:45.
25              THE COURT:  Now, between now and then, we have the
```

1    matter of bond.

2              I assume you do not object to an OR bond?

3              MR. CONWAY:  I didn't even want an OR bond, Judge.  I

4    --

5              THE COURT:  You do not want any bond?

6              MR. CONWAY:  No.

7              I have prepared a release form.

8              THE COURT:  I think we have to set some --

9              MR. CONWAY:  If you want a 4500 OR bond, that is fine.

10             THE COURT:  I think we have to set one for formalistic

11   reasons.

12             So, it will be 4500 OR.  He can sign it.

13             There will be no territorial jurisdiction as to the

14   bond, in terms of the 48 contiguous states.

15             Mr. Warner, there is going to be a Presentence Report

16   prepared about you and about these activities, as well as about

17   other activities that make up your business interests, your

18   personal interests and things about you.  And it would be

19   advisable for you to participate in the preparation of that

20   report.

21             You are asked to do that and your counsel will further

22   explain that.  But this document is very important in assisting

23   me in knowing about you and knowing, perhaps, with a little

24   greater elaboration, what you did in this case and other things

25   that involve you, before I sentence you.  Okay?

1          So, that document will be prepared.  You will have a

2    chance to read it and review it.

3          If you think some material in there is incorrect or

4    the Guideline calculation is wrong, you can challenge it.

5          And that is how we are going to proceed to do

6    business.  Okay?

7          Do you have any questions?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  All right.

10         MR. CONWAY:  I will submit the bond form for your

11   signature.

12         THE COURT:  Okay.  I will sign it.

13         I will also sign the waiver form.

14         (Document tendered.)

15         THE COURT:  All right.

16         MR. SCANDAGLIA:  Your Honor, if I may address one

17   issue --

18         THE COURT:  Yes.

19         MR. SCANDAGLIA:  -- in connection with bond?

20         Mr. Warner's business has always required a

21   significant amount of international travel, particularly to

22   Asia.  And your remarks in connection with the OR bond

23   mentioned free travel to the 48 contiguous states.

24         THE COURT:  Yes, I got it.

25         Do you have any objection to any foreign travel?

1          MR. CONWAY:  None whatsoever.

2          He doesn't even need to report it to us.

3          THE COURT:  All right.

4          You do not have to report it.

5          There will be no travel restrictions of any kind.  And

6  you can maintain your passport.  Okay?

7          MR. SCANDAGLIA:  Thank you very much.

8          THE COURT:  Does that solve it?

9          THE DEFENDANT:  Thank you, your Honor.

10          MR. SCANDAGLIA:  Yes.

11          THE COURT:  All right.  Very good.

12          All right.  That will end the proceeding.

13          MR. CONWAY:  Thank you, Judge.

14          MR. SCANDAGLIA:  Thank you, your Honor.

15                    *   *   *   *   *

16  I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.

17

18  /s/ Joene Hanhardt                December 26, 2013
   Official Court Reporter

19

20

21

22

23

24

25